**In re Michael Martin MONTGOMERY, Debtor.**

**Kimberly D. Taylor, Plaintiff,**

**v.**

**Michael Martin Montgomery, Defendant.**

**Bankruptcy No. 03–61968.
Adversary No. 03–6086.**

United States Bankruptcy Court, W.D. Missouri.

March 26, 2004.

Kenneth P. Reynolds, Reynolds & Gold, Springfield, MO, for Debtor and Defendant.

Kimberly D. Taylor, Brookline Station, MO, pro se.

## MEMORANDUM OPINION

ARTHUR B. FEDERMAN, Bankruptcy Judge.

On November 4, 2003, *Pro se* plaintiff Kimberly Taylor filed an adversary com-

plaint captioned "OBJECTION TO DIS-CHARGE OF DEBTOR AND/OR DIS-CHARGEABILITY DEBT." This is a core proceeding under 28 U.S.C. § 157(b)(2)(J) over which the Court has jurisdiction pursuant to 28 U.S.C. § 1334(b), 157(a), and 157(b)(1). The following constitutes my Findings of Fact and Conclusions of Law in accordance with Rule 52 of the Federal Rules of Civil Procedure as made applicable to this proceeding by Rule 7052 of the Federal Rules of Bankruptcy Procedure. For the reasons set forth below, I will deny debtor Michael Montgomery a discharge.

### FACTUAL BACKGROUND

On August 11, 2003, Mr. Montgomery filed a Chapter 7 bankruptcy petition. He listed net income from Polar Tank Trailer in the amount of $642.29 and expenses in the amount of $1494.14. He scheduled secured debt in the amount of $15,989, priority debt in the amount of $1,164.33, and general unsecured debt in the amount of $14,643.80. He listed no other source of income in either Schedule "I" or his Statement of Financial Affairs. On November 4, 2003, Ms. Taylor filed an adversary proceeding objecting to both Mr. Montgomery's discharge and the dischargeability of a judgment debt awarded her by the Circuit Court of Greene County, Missouri (the Circuit Court). The body of the Complaint, however, referenced only the judgment debt in the amount of $10,430.37, and on November 21, 2003, this court granted Mr. Montgomery a discharge.

At the pretrial conference held on March 4, 2004, Ms. Taylor alleged that Mr. Montgomery failed to list all of his sources of income at the time he filed his bankruptcy petition. She then made an oral motion to amend her Complaint to include Counts pursuant to 11 U.S.C. § 727(a)(2) and (4)(A). On March 8, 2004, this Court entered an Order granting that oral motion. Counsel for Mr. Montgomery neither objected to the oral motion at the pretrial conference nor appealed the Order granting the oral motion. On March 17, 2004, this Court held a trial on the merits.

Ms. Taylor represented herself, and Mr. Montgomery was represented by counsel. At the hearing, Ms. Taylor testified that she and Mr. Montgomery had shared a residence some time prior to his bankruptcy filing. She stated that at some point, after their relationship had ended, Mr. Montgomery refused to repay her for funds she had extended to him. Ms. Taylor stated she filed suit in the Circuit Court and obtained a judgment. She claims that after she began to garnish Mr. Montgomery's wages, he filed this Chapter 7 petition. She testified that Mr. Montgomery assured her at the 341 meeting that he would pay the judgment debt, but then changed his mind. She then filed this adversary proceeding. She also testified that she examined Mr. Montgomery's bankruptcy schedules and discovered that he failed to disclose his secondary sources of income. Ms. Taylor claims that while she and Mr. Montgomery shared a residence he worked evenings for a man named Clay Phillips, after completing his regular shift at Polar Tank Trailer. She also claims that Mr. Montgomery worked part-time at a race track. She testified that Mr. Montgomery received cash from both of these employers, and that he never claimed the funds as income or listed them on his bankruptcy schedules.

Mr. Montgomery testified that he is no longer employed at Polar Tank Trailer. He now works only for Clay Phillips as a fabricator/welder. He did not, however, deny that he worked for Clay Phillips on a part-time basis during 2002 and 2003. He never reported that income to the Internal Revenue Service nor listed it on his bank-

ruptcy schedules. He testified that a tornado in Battlefield, Missouri destroyed Clay Phillips' shop in May of 2003, therefore, he did no work for Mr. Phillips until the shop reopened in November of 2003. He then corrected that statement by saying he did a small amount of work for Mr. Phillips in a temporary location to repay a loan. He stated that Mr. Phillips loaned him $900.00 to pay his attorney to file this bankruptcy petition, and he worked a couple of hours a week to repay the debt. His bankruptcy schedules do not reflect any income from Mr. Phillips for 2002 or 2003. Mr. Montgomery also testified that he worked at a race track during the summer of 2002. He said he earned between $50.00 and $100.00 each time he worked there and he worked there at least four times. He admitted that he filed his tax returns for 2002 and did not include income from either the race track or Clay Phillips. Ms. Taylor testified that she prepared Mr. Montgomery's tax returns for 2001, and that she did not include any income from the race track or Clay Phillips. Mr. Montgomery testified that he thought he received a 1099 from Clay Phillips for 2003, but his schedules reflect only income from Polar Tank Trailer. Mr. Montgomery stated he worked for Clay Phillips two or three nights a week for two to three hours each night. He estimated that he earned approximately $80.00 per week for the first 16 weeks of 2003. Mr. Montgomery testified that he only worked for Clay Phillips just prior to filing his bankruptcy petition because he still owed Mr. Phillips money. He did not, however, list Mr. Phillips as a creditor on his bankruptcy schedules. Thus, the issue becomes whether Mr. Montgomery should be denied a discharge because he intentionally concealed assets to hinder, delay or defraud his creditors or made a false oath regarding his bankruptcy schedules when he failed to report all of his income and when he failed to list all creditors.

## DISCUSSION

■ Honest debtors, who provide "complete, accurate, and reliable information at the beginning of the case, so that all parties may adequately evaluate the case and the estate's property may be appropriately administered,"[1] are entitled to a discharge. Debtors, however, who knowingly and fraudulently file inaccurate schedules, or fail to disclose all assets will be denied a discharge:

(a) The court shall grant the debtor a discharge, unless—

. . . . .

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be, transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition;

. . . . .

■ (4) the debtor knowingly and fraudulently, in or in connection with the case—

(A) made a false oath or account.[2]

Ms. Taylor amended her Complaint to include Counts pursuant to 11 U.S.C. § 727(a)(2)(A) and (4)(A). She offered no evidence, however, that Mr. Montgomery concealed assets in an attempt to hinder, delay or defraud creditors. Nor did she offer any evidence that Mr. Montgomery

---

1. *Id.*

2. 11 U.S.C. § 727(a)(2)(A) and (4)(A).

still possessed any assets he failed to list on his schedules. I will, therefore, find in favor of Mr. Montgomery as to the 11 U.S.C. § 727(a)(2)(A) Count.

As to the § 727(a)(4)(A) Count, however, this Court cannot grant Mr. Montgomery a discharge if he "knowingly and fraudulently, in or in connection with the case ... made a false oath or account." [3] Thus, Ms. Taylor, as the objecting party, had the burden of proving that (1) Mr. Montgomery made a statement under oath; (2) the statement was false; (3) Mr. Montgomery knew the statement was false; (4) Mr. Montgomery made the statement with fraudulent intent; and (5) the statement was material to the bankruptcy case.[4] By his own admission, Mr. Montgomery made a false statement under oath, and he knew the statement was false. A statement regarding income and liabilities is material to a bankruptcy case.[5] The only issue before me, therefore, is whether he swore a false oath with fraudulent intent. In *Sholdra,* the court granted summary judgment to the plaintiff who had objected to debtor's discharge when, confronted with the fact that he made materially false statements in his Statement of Financial Affairs, the debtor remained silent and did not present any facts creating a genuine issue of material fact.[6] Likewise, Mr. Montgomery did not offer any credible explanation for failing to account for all of his income as required. He stated that he did not report the income from the race-track because he did not think he needed to report small sums. He offered no reason for his failure to report

income from Clay Phillips up until May of 2003. He did state that he borrowed money from Mr. Phillips in order to file for bankruptcy relief, and he was working to repay that loan, so he did not consider those earnings as income. But if so, he failed to list Mr. Phillips as a creditor in the bankruptcy case, which would make the schedules false in yet another way. Based on the evidence, I find that he was well aware that cash payments received by him constituted reportable income for the years 2001, 2002, and 2003.

Question number one in the Statement of Financial Affairs, which Mr. Montgomery signed under oath, required him to state the gross amount of income he received from his employment, trade, or profession, or from operation of his business, from the beginning of this calendar year to the date this case was commenced. It also required him to state the gross amounts received during the two previous years.[7] When questioned during the hearing, he stated that he failed to list all of his income for either the year he commenced his case, or the two previous years.

Mr. Montgomery had an obligation to disclose all of his income either on his schedules or in his Statement of Financial Affairs. His intentional failure to do so constitutes a false oath.[8] And a false oath regarding the failure to list income is material to the proper administration of a bankruptcy case. As the court stated in *King,* "[c]reditors and the trustee are entitled to information regarding a debtor's

---

3. 11 U.S.C. § 727(a)(4)(A).

4. *Sholdra v. Chilmark Financial L.L.P. (In re Sholdra),* 249 F.3d 380, 382 (5th Cir.2001).

5. *Id.* at 383 (stating that "full disclosure of assets and liabilities in the schedules required to be filed by one seeking relief under Chapter 7 is essential").

6. *Id.*

7. *The Cadle Co. v. King (In re King),* 272 B.R. 281, 292 (Bankr.N.D.Okla.2002)

8. *Id.* at 299.

income so they may investigate, among other things, whether the debtor has hidden the funds to conceal them from creditors." [9]

At the hearing Mr. Montgomery was very forthright and made no attempt to conceal the fact that he had filed tax returns that underreported his income for at least three years. Moreover, Mr. Montgomery's testimony was credible that he earned very little income from his second jobs. Nonetheless, he freely admitted that he made a material false oath in relation to his bankruptcy schedules when he failed to disclose all of his income, and when he failed to list Clay Phillips as a creditor. He failed to offer a credible justification for making false statements in the schedules filed with this Court. I find, therefore, that such false statements were made knowingly and fraudulently. Accordingly, pursuant to section 727(a)(4)(A) of the Bankruptcy Code, his discharge must be denied.